This is Rene Wassel. This is Tyrone Peterson. We have for the appellate Howard Feldman. For the appellee, Bevette Salas. Mr. Feldman. May it please the court, counsel. This case arises out of requests for modification and a claim for attorney's fees in a parentage matter. Parties to this action are parents of one child, Khalil, who was born on November 21, 1998. In June of 2000, custody was awarded to Rene, and a visitation schedule was created. The visitation schedule initially was first and third weekends, and some additional holiday and summer visitation schedules were also included. The parties are both flight attendants and scheduling could best be described, in my opinion, as a nightmare in terms of our traditional weekend visitation. Child support was set at $530 a month, was raised shortly after the initial setting in July of 2001 to $580 a month, and also included an amount of an arrearage because not all the child support had been paid. At the same time, visitation schedule was changed, but in 2005, when Khalil started school, visitation again was modified back to the first and third weekends, as well as an included provision that is described as first care. I oftentimes use it as a right of first refusal. Over the year, in 2006, the State's Attorney's Office, acting on behalf of the state of Illinois, did a child support calculation and raised the child support to $630. There was also a change in visitation that was a fairly complicated order, and to which a number of problems arose. A request in 2007 was next. I was out of the case for a period of time. She went to Child Support Enforcement. The State's Attorney's Office and Child Support Enforcement has that. I don't know if they were doing that when you were on the trial bench. I'm sure Judge Pope is familiar with the Attorney General's Office coming in and acting on behalf of the State's Attorney and Sangamon County does it. Even where both parties are employed? Even where both parties are employed, and much to my chagrin, and I guess this is a digression, even if a person is a senior member of the Department of Health and Family Services earning $90,000 a year, they're entitled to free services through the State Enforcement Unit. That is different than when I was at the trial level. So they set that, but in October of 2007, there was a request on Renee's part to seek a modification of support because of what was believed to be substantial increases in Mr. Peterson's income. Requests were made to Mr. Peterson for documents both informally and then formally over a period of months. It was pretty basic. Tax returns, pay stubs, information that just was not forthcoming and the court can look at the briefs and the docket sheets to see the number of case management conferences that were there. A motion to compel was filed. Although there were orders entered to comply, there was no order, no sanctions, no contempt, nothing of that sort was entered and I don't want to mislead the court, but the documents were not forthcoming. There were then motions with respect to modification of the visitation as it related, at least from Renee's point of view, to the problem areas that existed. The three areas that came, that are before this court, is the trial court's refusal to modify visitation, modified trial court's refusal to modify the support, even for the periods between October of 2007 and when Mr. Peterson took a voluntary change of employment for a temporary period of time to become a financial advisor, stockbroker, if you're my age, in 2008 at the time of the financial meltdown. He took a voluntary leave of absence approximately three months prior to the hearing in this cause and he requested a reduction in his support based upon this new six-month training period in which he was going to be working as a trainee, I guess, and get his license in securities. The second issue that is before the court relates to the court's, what I would refer to as sua sponte decision to modify the weekend visitation to an alternate weekend from a first and third weekend without any evidentiary basis because the court, I'm not sure why the court did it, the court did it. Were you at the trial court? This one I was, Your Honor, different this morning. I actually know what happened at the trial court this time. So there was never a request to change the visitation? There was a request, but there was no evidence that said what's wrong with the first and third versus what's wrong with, what's the betterment of the first and every other weekend because it comes down to 24 versus 26 weekends and then you have the summer visitation that's in there. So basically they turned the schedule that had been ongoing for a significant period of time and had been used for several periods of time and that worked for both parents and in fact the testimony is by both parents that the first and third weekends was working fine. The second point about it was the unrebutted testimony was the changing the schedule would be disruptive to Khalil because at this time, I'm not sure where you moved from adolescence into, from elementary school into adolescence, but he's at that 10, 11 year old age group at about this time. And the third issue before the court was the denial of the request for attorney's fees with regard to it. With respect to the child support calculation, 505 sets a minimum child support. As this court knows, the minimum and the maximum seems to be the same nowadays, but the minimum child support is 20% of the net income. And when determined what the minimum net income using the financial records provided to us in December, remember we've been asking for it since October of the year before, but the documents that we got in November or December of 2008, the determination was that his income would have given rise to a child support calculation of $919 versus an amount of $630 that she was receiving. That is a significant increase. Now that suggests that he had continued to work. But in September he took this leave. To me the leave is absolutely inexplicable other than we're coming to this crunch time about the child support amount. Why someone would pick a time at which there was a total collapse in the financial community. They were laying off hundreds if not more brokers and various financial people leaving the industry because they couldn't make an income. So you decide that what you want to do is to try to provide more stability so you're around more and protect yourself in the future when you no longer want to be a flight attendant. So you pick that industry. I don't know, because we're post that time, I don't know whether he ever went back, although it was a six month leave of absence and he testified that he intended to go back. But clearly from the period of time of October of 2007 until sometime when he filed his motion in October, Rene Lasso was entitled to, under the law, under Article 505, to that minimum child support amount. There was never an explanation why the court denied making that amount retroactive for that period of time. And the court did deny the motion to reduce the child support. So basing it upon some past salary calculation. When you look at the Affidavit of Income Expenses, Assets and Debts of Mr. Peterson, what you note is first there is at the final part of it, and this would be Respondents Exhibit 8, is a Continental Airlines pay stub for eight and a half months that, if calculated out to a full year, would show a gross income of approximately $66,695. You would note that Mr. Peterson owns three pieces of real estate property. One property here in Sangamon County that he valued at $200,000 and two other pieces of property, which I believe he testified that were occupied by family members. There is no rent shown that is being charged and he testified that he is not receiving any, although I believe he testified that one person is in fact paying the mortgage on the property. He testified that he has mortgages of $250,000 against properties of $280,000, $300,000 and $30,000 worth of real estate. He has remarried and his wife also, at the time, although she may have been on a leave, worked for Continental Airlines also. The child support calculation is almost mechanical. And, in fact, the fin plan almost has become mechanical, or is mechanical. Fill in the numbers. There is no basis for what I think is a deviation or for a belief that he should not pay the full child support amount. I further believe that the evidence is such that the court's decision not to increase support and keep that support going is an abuse of discretion. With regard to the second issue, the visitation issue, the courts are vested with broad discretion for visitation. I recognize that. We were here this morning and I recognize the court's broad discretion in a more difficult case, in my opinion. But, in this case, a broad discretion has to be acted upon with some evidence. Where you have the testimony saying by both parties that the system is working, I believe the case law tends to support having some stability in the child's schedule. What occurred in this case, and in some respects it's alluded to, in the FLE's brief when they talked about the prior problems that existed, was an attempt to try to resolve the problems. Provide one of those court orders that provides very little discretion. Pick up at this time, drop off at this time. That was the attempt to be done. And, to be honest with you, to some extent it worked. And, that related to summer visitation. The court can look at the docket entry and see the problems. And, this alternate care provision, which became a big problem because it provided if you spend an overnight. So, if Ms. Watzel came back at 10 o'clock, Mr. Peterson thought that he had a right to the child that day, even though he already said it overnight. The FLE's brief focuses, one, that Mr. Peterson said that he wanted more time and he thought it would be a good thing to have more time. If that was the standard for modification of visitation, every case would be changed on a daily basis. The FLE, with regard to the finances and the child support, and specifically as to the attorney's fees, suggests that Ms. Watzel has also taken a voluntary leave from being a flight attendant and, therefore, has reduced her income. Both with regard to child support and attorney's fees, her financial status is appropriate in attorney's fees. With regard to child support, it is not. If she has decided that she would like to spend more time with her children, or, in this case, her child, and she can live on the child support and additional income that she makes, that's a decision she makes. She lives within that parameters of the income. But, that's not an issue. That is, and we use the term red herring. With regard to the attorney's fees issue, I can stand here and I can argue about it, but the courts can take a look at the docket sheet. Look at the number of times we were there for the case management. Look at the motion to compel. Look at what state. This was, and should have been, an incredibly simple case. Provide me your tax return. Provide me your pay stub. Provide a complete and honest affidavit of income expenses, assets, and debts. We got what we got. To move forward, I'd still be in the trial court trying to get information or subpoenaing documents all over the place to try to fill in the bank account records. At some point, it becomes diminishing returns. Ms. Wassell should not be punished and have to pay large sums of attorney's fees because somebody has decided to make matters much more complex than they need to because they want to be recalcitrant to do it. The record in this case, I think, is fairly clear and it's straightforward. I believe that it supports the award of child support at $919 per month retroactive to October of 2007. I believe she is entitled to her attorney's fees at the trial court level that we're asked for. The court affidavit is in there. There's no dispute about the hourly rate. I believe that reasonably, if successful, this court is entitled to her fees for coming forward for this case. As far as the visitation, I'm a very practical person. I do this work every day. And we've disrupted this child's life now. But there needs to be some parameters when we say a trial court is vested with wide discretion. There needs to be some evidence. It cannot be, and I don't want it, this is a trial judge I know and does a lot of this work and is a good trial judge, so I don't want to be focused just on him. That's the case before us. Trial judges need to know there's some parameters. In other words, a trial judge just can't sit and substitute their judgment without evidence as to how they think a child should be raised or how they think the visitation should be. Was there a motion for rehearing on that issue? Oh, yes, there was a motion for rehearing with regard to a number of issues that are still outstanding and the motion for reconsideration is done. So what is the visitation? Alternate weekends. The visitation before? It was first and third weekends. It's a difference of two weekends a year. And I haven't even tried to figure out, Your Honor, when I figure in the holiday and the summer visitation whether there's actually even any difference. I think very early on I actually thought the alternate weekends with all this nonsense that goes back and forth actually resulted in a little bit less time. The real problem is the first and third weekends allow both of these parties to have a firm schedule to which they could bid for their jobs. That was really... And I don't pretend to understand it. And it's in one of the earlier hearings that I think it was not really dealt with in the hearing before this Court. The manner in which flight attendants bid for jobs makes answering an IRS tax question look easy. I mean, it's just absolutely beyond me. And I think it was beyond one of the earlier trial courts. If you look at the entire history of the case, first and third weekends were used for the longest period of time. That really was the base stability. And had he, Mr. Peterson, asked for a change to... He had. I don't want to... It was included in a petition that he had, but there was no evidence of why that would be better than what had been in existence. If the Court doesn't have any questions. Thank you. Ms. Ellis? First, I'd like to just sort of elaborate or clear up a couple of statements. The visitation order was modified first in May of 2006. And at that point, it went from the first and third weekends to a situation where the parties had a right of first care when the other party was working and traveling. At the time that that order went into place, both parties were traveling and working a lot. The hope and expectation was that they would have schedules that would piggyback each other, recognizing that it would be best for the child if he was in the care of either of his parents rather than third parties. And the May 2006 order specifically states that. It was also the May 2006 order where child support was changed to $630. It was not a state's attorney action at that time. However, subsequent to the May 2006 order, within six months of the May 2006 order, Ms. Wassel took extended leave of absence, furloughs, so that right of first care fell out of the battle. There wasn't any need for Mr. Peterson or opportunity for Mr. Peterson to have that first care time anymore because Ms. Wassel wasn't traveling anymore, even though she was a flight attendant. She was taking six months leave of absence, nine months furloughs, three months furloughs, one after another. And Mr. Peterson then was having a shorter time than was agreed to in May of 2006 without the anticipated right of first care time that he envisioned, and really parties would have envisioned based on their work schedules at the time that that order was set. As for scheduling nightmare, the May 2006 order had a provision that said each party was to give the other their schedule by a date certain for the following month so that they could swap dates and cover, swap dates with other employees, other colleagues, to be able to cover when the other one was there, dump a trip, pick up a trip, and alternate. Ms. Wassel, I guess she stopped basically working as a flight attendant mostly, although she worked enough to keep her status as a flight attendant, and the schedules that cover furloughs are in the record. She also testified that she minimized her work hours, her flight time work hours, so that she would only be working when Khalil was to visitation with his dad. That was her objective and her goal. So basically after the right of first care was established which reduced the number of weekend visits Mr. Peterson would have anticipating first care time during the week, that went out the window by changes in Ms. Wassel's work. Was there evidence presented as to why the second and fourth weekends would be better and the changes? Well, what happened was that the evidence that was presented was Mr. Peterson's testimony that he wasn't being given opportunities for right of first care, he was getting less time with the child, less time than he had before May of 06, and that since the right of care wasn't working, a more rigid schedule, alternating weekends, which both parties have calendars or access to calendars and can figure out if I don't work this weekend I work next weekend, in perpetuity, so it's not all that confusing, would be able to sort through. So he felt that it would ensure that he had reasonable contact with the child on a regular basis. He also testified that it would be in the best interest of the child to have contact with him so that they could pursue things that they weren't able to pursue on a regular basis, sports, French lessons, regular church attendance, midweek, things like that. And then Ms. Wassel also testified that, I believe she testified that the right of first care wasn't working as well. And it was because she thought it was too much transition for the child, and also she testified that she was limiting her work to be those times when the child would be with his father on the regular scheduled visitation. So with that, the judge was, that gets us up to, I guess, May of 07, which is when Mr. Peterson filed a motion to modify the visitation, because he had observed opportunities when the mother said she'd pick up the child from school, but she was really out of town, still on travel, he would go to the bus and see that somebody else was there to pick up the child, and the child would go home with him. There were times when she would call to say, or decide that since her mother could be there in the middle of the night when the child woke up, even though she had to leave in the middle of the night to report to work, that didn't count as overnight travel, so they didn't get the right of first care from the night before, things like that. So it wasn't working the way they envisioned, and he believed it wasn't working in compliance with the letter, the intent, if not the letter. So he asked the court for a rule to show cause, and for the court to clarify or modify the order. And that's how we got back into court on May of 2007. I need to back up one step and say, however, that in April of 2007, the Department of Health Care and Family Services Child Support Enforcement did do a review of Mr. Peterson's financial obligations and child support obligations. That was Respondent Exhibit Number 11 at hearing. It was the record number 61. And at that time, so a month before filing the petition, four months before the new petition in this case was filed to modify child support, Health Care and Family Services had done a review. It wasn't the state's attorney. It was the Child Support Enforcement Regional Office on West Jefferson that had done the review. And they called them in, they asked for documentation, and they came back with a letter that says, we've reviewed the child support for possible modification, and we are unable to proceed because this case does not qualify for upward modification at this time. So as of April of 2007, they did the review and said it doesn't qualify. That's a little bit of a clarification I wanted to make. So there wasn't anything sneaky going on. He got the papers, called in for review, they did the review and said everything was fine. The 630 number was still an appropriate number. As to the question of the travel, the vacation, I want to make one quick clarification. In my brief, I did indicate that Ms. Wassell had some financial means, at least sufficient means, to take a vacation in May of 2008 to Hawaii with the child. And I need to clarify that vacation was not May of 2008, it was May of 2007, and that was presented to the court and heard by the court, if you look at the record at pages 108 to 112, when we were back in court because Mr. Peterson was seeking an emergency ruling to permit him to travel outside the country with the child as permitted by the May order. And so we brought to the court's attention that Ms. Wassell went to Hawaii. It seemed only appropriate that Mr. Peterson should be able to travel as well. And that is one of the wonderful things that these parents have to offer this child that many children don't have. But Mr. Peterson had been frustrated with that over the time, and that was the other part of the May rule to show cause, which was there were actually a supplemental petition for rule to show cause, because the past courts wasn't traveling back and forth and he was being deprived of the opportunity for international travel or vacation. So with that said, and maybe I've gone too far in too many different directions, the court had a lot of evidence in front of it regarding the best interests of the child, regarding the need to modify the schedule that was put in place to be workable for the parents but also beneficial to the child. It wasn't that the court did anything sui sponte. The May 07 petition specifically asked the court to modify or clarify the visitation order that was entered in May of 06. It wasn't operating the way Mr. Peterson believed it read or the way that the court would have intended or in the best interests of the child. So it wasn't something that the judge just abused as discretion and plucked it out of thin air. It was squarely before the court. As to the request for attorneys' fees, the court had a lot to consider there, not the least of which was, although Ms. Walsall may have had limited income, she didn't disclose all of it on her financial affidavit, she neglected to put her unemployment income that she was receiving, but she also had much more opportunity to earn income, as Mr. Feldman pointed out, but she was choosing not to, not for invalid reasons, for okay reasons to be with her child, the same reasons that Mr. Peterson, in part, was pursuing this alternate career to be available to the child more as well as to his new family, to have a more stable lifestyle that would have him not traveling away so much. And the court found, and specifically found, that Mr. Peterson's reduction in flight attendant income was not anything other than lifestyle-based. In other words, it was not intended to or an attempt to avoid financial obligation or deprive the child of financial support. Well, I can appreciate Ms. Walsall wanting to be there for her child. She was barely working, although she had this career, and she could have worked much more. She was choosing not to be there for her child, but also, as a consequence, to deprive Mr. Peterson of that alternate right of care. It wasn't like the child was going to be abandoned. He had another parent to be there for him. The other thing the court had in front of it was that Mr. Peterson said, hey, you know, I'm paying a lot of child support here. Ms. Walsall's income is incredibly small, as reported to the court. Award me some of the tax considerations of that. Allow me to claim this child every time, alternate years or occasion, or all the time, given that my child support obligation exceeds more than 50% of her earned income by her own choice. And the court denied that. So the court knew she was going to get the benefit of claiming the child on her taxes, earned income credits, the dependence exemption allowance, all that stuff. And the court was aware of that and denied Mr. Peterson's request, but that gave Ms. Walsall resources with which to pay her attorney's fees. She also had the option of working to pay her attorney's fees. She's the one who changed the work schedule and scenario which brought this all in here. She's the one who didn't pass off the passports as requested. Again, the judge did not find anybody in contempt on any of this stuff. He made no contempt rulings for either party, and therefore there were no sanctions. But it's not unreasonable to say that when one of the parties doesn't comply with the spirit of not the latter, and the other one says foul, that you have to bear the costs of defending your actions. And it doesn't seem inappropriate for the court to have awarded it that way. The court had broad discretion on all three of these issues. On the issue of child support, on the issue of attorney's fees, on the issue of visitation. The court has broad latitude. The court had a lot of evidence in front of it. It had a lot of testimony. It had a series of motions. This court, I'm sure to its frustration, was exhausted in patience or energy at this point, perhaps. But the judge was very familiar with both the facts of the case and the parties. And I don't think it was at all inappropriate for the court to go ahead with the knowledge it had presented in the case to make the rulings that it made. It was squarely within the court's decision. When did your client's income go up to justify the $918 a month child support? I don't know that it ever did. As of April 07, when Child Support Enforcement at Healthcare Family Services reviewed this income, they said the $630, which had been put in place in May of 06, was the appropriate amount. Do we know what evidence was in that hearing? Honestly, I don't know. I would suspect that if they didn't feel they had the evidence they needed, they wouldn't have made a determination. They always have the right. They already intervened in this case. Was the evidence before Judge Narduli that he made $69,000 a year for 11 months prior to this hearing? Yes, I believe that was. And the $919 calculates out 20%? It does. Now, there were other expenses and taxes and things like that that would have changed things around in the court. It doesn't have to be formulistic. It can look at the abilities as well as other obligations of the parent. And, again, the court has discretion. And I think the court also has discretion to not constantly review a child support finding. In other words, when a finding is made on April 2007, the court does not have to reconsider it on May 2007 or October 2007. But the court didn't do that in April, correct? The court did not, but a review had been made. But the court's not bound by that review. It's not bound by that review, but it doesn't have to keep letting people have bites at the apple over and over and over again. It's not bound by it, but it certainly didn't have to ignore that these are professionals who are reviewing this stuff. And if they made a finding, then there's not a whole lot of change between them. So in that regard, you know, I... How much more was he making than he made before? I can't answer that question. As I looked at the record, I might be able to. I believe both parties submitted financial affidavits in the May of 06, before the May of 06 ruling, but I can't be sure off the top of my head. But it's been a... He's had a steady incline, and then he had this decline. And the decline wasn't just something out of thin air. He works for Continental Airlines. Continental Airlines was having problems, as most of the airline industry was in 2008. The testimony and documentary evidence shows that all the flight personnel, flight attendants, received notice saying that they were looking at system-wide furloughs, asked employees to consider three-month, five-month, or nine-month furloughs. Mr. Peterson opted for a five-month furlough, which would give him the opportunity to pursue this alternate training career, for which he got paid. And he earned an income during that time. It wasn't like he was just going to school. He was a training wage, but it was much more than what Ms. Wassel was making when she was on furlough, not pursuing anything else other than yoga teaching. I think I just read that personal trainers make quite a significant sum these days. Apparently some do. Ms. Wassel, of course, her financial affidavit isn't one of them. Maybe she is now, and that would be wonderful. So they had this notification of potential system-wide layoffs. Mr. Peterson opted for this five-month layoff, which he could use productively, constructively, and be here for his family. Mrs. Peterson opted for a nine-month furlough. She was moving into a newer environment, trying to establish herself and her son here. It wasn't like it was plucked out of thin air as an attempt to evade anything. It was to address a change in the economic environment and the uncertainty of the travel industry and to get a career path started that would allow more stability, more availability, and more continuity. I'm out of time. I don't know if there are any other questions. No, thank you. Thank you. Roberta? Much of what was said was before the Court and isn't before this Court. I'm not going to belabor that issue, but I would like to go back to the May 2006 order in the first paragraph. Tyrone Peterson shall have visitation with Khalil the first full weekend and the third full weekend of each month from Thursday at 3 p.m. until Sunday at 5 p.m. If the Sunday of the first and third full weekend is followed by a Monday holiday, during which Tyrone Peterson is to have visitation, then the visitation shall be from Thursday at 3 p.m. until the end of the holiday visitation. If Khalil has a music lesson on the Thursday during visitation, Tyrone Peterson shall take Khalil to the music lesson and shall pay the instructor $10 for the lesson. So the first and third was, in fact, in the order of May 2006, and it had nothing to do with the right of first refusal. It was the way that Mr. Peterson interpreted it and the lack of the abilities of the parties to work together on that interpretation that resulted in the need to change the order. And it should be noted the May 2006 order, which included the 630, and I don't know what the rate child support amount would have been in May 2006. Ms. Wassell was represented pro se. She represented herself. Ms. Salas represented Mr. Peterson. It didn't take any rocket science to figure out what the child support amount is. Once I could figure out what a pay stub was, I didn't get a pay stub. I didn't get tax returns. This Court can look at those exhibits itself, and it can look at his affidavit and look at the tax return in comparison to the affidavit and the fact that there are at least two parcels of real estate that don't even seem to show up on the tax return in terms of no depreciation, things that people do in the normal event. These are two other parcels to which they are titled in his name. Ms. Wassell decided, I'm not exactly sure what the argument is, has decided that she will, when her child is young, spend as much time with him as possible. She didn't deprive Mr. Peterson of time with the child. What happens is these people have the ability to travel at very low cost. And this trip to Hawaii, I'm not exactly sure what it has to do with this case, in this particular manner. Ms. Peterson can go to Hawaii, much to my chagrin, for barely near nothing. She works as long as she can get a ticket. Mr. Peterson voluntarily took the layoff. He has very high seniority. That's why he got as much overtime or additional time as he has. We can interpret his actions, I guess, in multiple ways, that he's trying to better himself and have a more stable environment. I just find it incredibly odd to do it within 60 days of the schedule of a hearing, and in a position to which, realistically, there was no future opportunity in any short term. And I would say that the financial system is equally under stress as it is today. Thank you for the court's time, Melissa. I'm done, Melissa. Thank you, counsel. We'll take this matter under advisement.